United States Bankruptcy Court
Southern District of Texas
**ENTERED**
January 07, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 24-90377** |
| **ZACHRY HOLDINGS, INC., *et al.*,** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **Debtors.** | § | |
| | § | |
| **FLNG LIQUEFACTION LLC, *et al.*,** | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 24-3195** |
| | § | |
| **CB&I INC, *et al.*,** | § | |
| | | |
| **Defendants.** | | |

**MEMORANDUM OPINION**

FLNG Liquefaction, LLC, FLNG Liquefaction 2, LLC, and FLNG Liquefaction 3, LLC (collectively "FLNG") commenced this adversary proceeding against CB&I Inc., Zachry Industrial, Inc, and Chiyoda International Corporation (collectively "Contractors") seeking damages arising from the alleged breach of engineering, procurement, and construction contracts ("EPC contracts"). The contracts concerned the construction of a natural gas liquefaction and liquified natural gas export facility on Quintana Island near Freeport, Texas. FLNG discovered assembly defects in three 75 MW motors after one motor tripped and remained offline.

The Contractors seek partial dismissal of the claim for consequential damages. FLNG was granted leave to amend its complaint to plead gross negligence.

For the reasons stated below, FLNG's claim for consequential damages is dismissed with prejudice.

## BACKGROUND

### I. FACTUAL BACKGROUND

Freeport LNG's natural gas liquefaction and LNG export facility is the first world-scale electric-powered LNG plant in North America. ECF No. 60 at 4. The facility has three liquefaction processing trains, where natural gas is converted to liquid. ECF No. 60 at 4. Each train uses General Electric 75 MW motors, which were selected to comply with local air emissions standards and to meet FLNG's production targets. ECF No. 60 at 4.

Between 2013 and 2015, the parties executed virtually identical EPC contracts for the construction of Trains 1–3. ECF No. 60 at 5. Section 2.3 of the EPC contracts imposes liability on the Contractors for the acts and omissions of any subcontractors. Section 2.3 provides:

> Owner acknowledges and agrees that Contractor intends to have portions of the Work accomplished by Subcontractors pursuant to written Subcontracts between Contractor and such Subcontractors. . . . The provisions of any Subcontract or Sub-subcontract shall not relieve Contractor of any obligations to perform the Work or of its responsibility for each Subcontractor or Sub-subcontractor. . . . Contractor shall be fully responsible to Owner for the acts and omissions of Subcontractors and Sub-subcontractors and of Persons directly or indirectly used by any of them, as Contractor is for the acts or omissions of Persons directly employed by Contractor in the performance of the Work.

ECF No. 60 at 6.

Section 20.5 of the EPC contracts waives any claim for consequential damages arising out of the construction of the trains. ECF No. 39 at 4. Section 20.5 provides:

> **Consequential Damages.** NOTWITHSTANDING ANY OTHER PROVISIONS OF THIS AGREEMENT TO THE CONTRACT, NEITHER OWNER NOR CONTRACTOR SHALL BE LIABLE TO EACH OTHER UNDER THIS AGREEMENT OR UNDER ANY CAUSE OF ACTION RELATED TO THE SUBJECT MATTER OF THIS

> AGREEMENT, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, PRODUCTS LIABILITY, INDEMNITY, CONTRIBUTION, OR ANY OTHER CAUSE OF ACTION FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL LOSSES OR DAMAGES, INCLUDING LOSS OF PROFITS, USE, OPPORTUNITY, REVENUES, FINANCING, BONDING CAPACITY, OR BUSINESS INTERRUPTIONS . . . AND OWNER AND CONTRACTOR ON BEHALF OF THEMSELVES HEREBY WAIVE AND RELEASE EACH OTHER FROM ALL SUCH LOSSES AND DAMAGES.

ECF No. 39 at 4. On January 17, 2024, a Train 3 motor tripped and remained offline. ECF No. 60 at 10. Investigations determined that the direct cause of the motor failure was an electrical short caused by loose hardware within the non-accessible portion of the motor. ECF No. 60 at 10. The loose hardware dislodged from a protective panel and fell into the motor windings. ECF No. 60 at 10. The root cause analysis also found "significant partial discharge"[1] on the cable bundles due to "the excessive length of the cables and the increased bend radius of the cabling." ECF No. 60 at 11.

Because the same GE motor was used in Trains 1 and 2, FLNG implemented enhanced monitoring of Trains 1 and 2 and planned to perform inspections of Trains 1 and 2 after repairs to Train 3 were completed. ECF No. 60 at 11. The enhanced monitoring discovered "an increase of partial discharge and current abnormalities in one of the Train 2 motors." ECF No. 60 at 11. Train 2 was taken offline. ECF No. 60 at 11. Inspections of the Train 2 motors found similar defects that plagued the Train 3 motors. Additionally, the micarta panel separated because a two-foot-long bolt assembly dislodged from the panel. ECF No. 60 at 12.

[1] Partial discharge is a localized electrical discharge that occurs within the insulation of electrical equipment and that does not completely break the insulation. Partial discharge can precipitate a short circuit in an electrical system. *See* Sambeet Mishra et al., *Diagnostics Analysis of Partial Discharge Events of the Power Cables at Various Voltage Levels Using Ramping Behavior Analysis Method*, 227 ELEC. POWER SYS. RSCH. 1 (2024).

Due to the extent of defects found in Train 2, FLNG decided to take Train 1 offline to mitigate further damage. ECF No. 60 at 12.

## II. PROCEDURAL BACKGROUND

On April 23, 2024, FLNG filed a lawsuit against the Contractors in Texas District Court seeking damages arising out of the motor defects. ECF No. 1-2 at 12.

On May 21, 2024, various Zachry affiliated entities filed for bankruptcy under chapter 11 in this Court. ECF No. 1-2 at 3.

On July 31, 2024, Zachry removed the lawsuit to this Court. ECF No. 1-2 at 1.

On October 18, 2024, Zachry filed a motion to dismiss FLNG's claim for consequential damages and lost profits. ECF No. 39.

On November 18, 2024, the Court held a hearing on the motion to dismiss. ECF No. 48. The Court took the matter under advisement and set a status conference for November 25, 2024. On that date, the Court dismissed FLNG's claim for consequential damages and granted FLNG leave to re-plead on the narrow grounds of gross negligence.

On December 3, 2024, FLNG filed its first amended complaint. ECF No. 60. On December 4, 2024, Zachry filed its supplemental brief in support of the motion to dismiss FLNG's claim for consequential damages. ECF No. 61.

On December 9, 2024, the Court held a hearing on the amended complaint. ECF No. 66.

On December 13, 2024, the Court announced its oral ruling dismissing FLNG's claim for consequential damages with prejudice for failing to state a claim for gross negligence. ECF No. 70.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## LEGAL STANDARD

The Court reviews motions under Federal Rule of Civil Procedure 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). However, the Court will not strain to find inferences favorable to the plaintiff. *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

Motions to dismiss for failure to state a claim upon which relief can be granted "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)). To avoid dismissal under Rule 12(b)(6), the plaintiff must provide sufficient factual matter to state a claim for relief that is plausible on its face when accepting that factual matter as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard asks for more than "a sheer possibility that the defendant acted unlawfully." *Id.*; *see Lormand*, 565 F.3d at 232 ("[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007))).

## DISCUSSION

In this removed action, FLNG asserts damages for repair costs, shut down of operations, and lost profits. ECF No. 1-2 at 12. Zachry seeks partial dismissal of the claims for consequential damages and lost profits.

In Section 20.5 of the EPC contracts, the parties agreed that neither FLNG nor the Contractors would be liable to each other for any cause of action related to the subject matter of the EPC Contracts for

consequential damages. From a pure contractual point of view, this provision would prevent FLNG from recovering any consequential damages from Zachry.

However, in Texas, public policy may render consequential damage waiver provisions unenforceable in cases of gross negligence because "enforcing such a provision to allow one party to intentionally injure another with impunity." *Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cnty.*, 449 S.W.3d 98, 116–18 (Tex. 2014) (noting that a contractual provision exempting a party from contract liability for harm caused intentionally or recklessly "would incentivize wrongful conduct and damage contractual relations."); *but see Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 416 n.10 (Tex. 2011) (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)) (holding that even a gross negligence finding would not support the recovery of purely economic losses in a case that could "only be characterized as a breach of contract"). The Court does not need to reconcile the holdings in *Zachry* and *Sharyland* because FLNG's amended complaint fails to state a claim for gross negligence.

Under Texas law, gross negligence is an act or omission:

> (1) Which, when viewed objectively from the standpoint of defendant at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (2) Of which defendant had actual subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE. ANN. § 41.001(11) (2024); *Diamond Shamrock Refining Co., LP v. Hall*, 168 S.W.3d 164, 168–69 (Tex. 2005).

As the Texas Supreme Court explains, "[w]hat separates ordinary negligence from gross negligence is the defendant's state of mind; in other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Id.* at 173.

The facts in *Diamond Shamrock* are worth a detailed review. The extreme risk, actual subjective awareness of the risk, and the severe resulting injuries, were all far more indicative of knowledge of the peril than the Court finds in this case. In *Diamond Shamrock*, an oil refinery explosion resulted in the death of one of its employees. *Id.* at 166. The explosion occurred when a reciprocating gas compressor ruptured due to liquids entering the compressor cylinder. *Id.* This was the third explosion related to issues in the compressor; the previous two instances occurred thirty years earlier. *Id.*

It is common knowledge that crude oil refineries are inherently dangerous. And it was within Diamond Shamrock's specific knowledge that the compressor had exploded before.

Diamond was aware of the possibility that liquids could backflow in the discharge line and result in an explosion. *Id.* at 171. Diamond installed a check valve to prevent the backflow. *Id.* The check valve worked for fifteen years. On the day of the explosion, Diamond had actual awareness that the check valve was leaking. *Id.* What Diamond did not have subjective awareness of was that the leak in the backflow presented a danger of explosion. *Id.*

From past experience, Diamond knew that sending liquids through the vapor line to the compressor could cause explosions. *Id.* Diamond guarded against it with a suction drum that was intended to give off a high-level warning alarm. The suction drum worked on the day of the explosion. *Id.* Also, the compressor was designed so that the compressor would shut down before any liquids entered into it.

After the explosion, Diamond modified bleeder valves, which vented flammable contents of the line into the air, to check for liquids in the compression. The Texas Supreme Court ruled that while the failure to make the modifications before the explosion could constitute negligence, it was not sufficient to establish gross negligence. *Id.* at 172 ("[F]ailure to implement redundant safety systems is not, on this record, any evidence of conscious indifference to the risk of explosion.").

The Texas Supreme Court found that Diamond's errors were akin to those in *Louisiana-Pacific Corp. v. Andrade*, 19 S.W.3d 245, 247–48

(Tex. 1999). In that case, power plant employees mistakenly believed that the electrical power to an overhead crane had been disconnected. *Id.* at 247. The mistake resulted in a workman receiving an electric shock, falling thirty feet to the ground, and suffering head injuries. *Id.* at 246. The court concluded that the employees were not subjectively aware of or consciously indifferent to the risk of injury to the workman created by the electrified crane. *Id.* at 248.

Inasmuch as the facts in *Diamond Shamrock* are inadequate to demonstrate gross negligence, the present case cannot sustain a finding of gross negligence under Texas law. FLNG alleges that a large motor inherently involves an extreme degree of risk . The Court assumes that FLNG will have evidence at trial to support that allegation. But, as in *Diamond Shamrock*, the fact that a refinery or a large motor has inherent dangers is inadequate to satisfy the state of mind requirement under Texas law. Inherent dangerousness does not eliminate the requirement for subjective awareness of a specific risk. That was true when Diamond Shamrock had two prior explosions closely related to the same cause, a fact not present here in any manner. FLNG's allegation that an awareness of potential for problems due to the size of the motor is not enough for an actual subjective awareness of an extreme risk.

Regarding the subjective state of mind requirement, the Contractors must have had actual awareness of the motor defects inside the casing and acted with conscious indifference towards the risk of the motor failing from the defects. The allegations, if taken as true, do not suggest that the Contractors knew about the defects and turned a blind eye to it. The allegations, in a light most favorable to FLNG, suggest that the Contractors knew how large and complex the motors were and failed to supervise GE's assembly of the motors. That is not conscious indifference to the specific risk of loose bolts tripping the system. *Diamond Shamrock*, 168 S.W.3d at 171 (Failure to take further precautions may be negligence, but simple negligence alone is not sufficient to establish gross negligence).

The amended complaint attempts to impose a strict product liability requirement on the Contractors—that is, by virtue of the size and complexity of the motor, any negligence on the part of the

Contractors, ordinary in other circumstances, rises to the level of gross negligence. This argument is opposite of the teachings in *Diamond Shamrock* and *Louisiana-Pacific.*

The amended complaint fails to plead gross negligence. Despite the fact that this is FLNG's second attempt, the allegations do not approach rule 8's requirements of stating facts that would give rise to a gross negligence finding.

FLNG expressed to the Court its concerns about dismissing the claim at the pleading stage, citing the absence of Texas state court cases that dismiss gross negligence claims at the pleading stage.

The issue of whether there is gross negligence must be substantively determined in accordance with Texas law. But, the issue of whether pleading gross negligence is adequate is a procedural issue under federal law. Federal pleading requirements are not determined by how the state courts review the adequacy of a complaint.

Although this action was initially filed in state court, the lawsuit was removed to federal court, and federal pleading standards apply. In *Wilson v. Korth Direct Mortgage, Inc.,* Judge Fitzwater in the Northern District of Texas allowed a plaintiff to replead gross negligence under the federal pleading standards when it dismissed the removed case pled under state standards. No. 23-2158, 2023 WL 8569084 (N.D. Tex. 2023). In *White v. Carter Commc'ns*, Judge Fitzwater dismissed a gross negligence claim at the pleading stage for failure to state a claim. No. 24-2139, 2024 WL 4895726 (N.D. Tex. 2024). The Court did not allow the plaintiff another opportunity to replead because he failed to oppose the motion to dismiss. *Id.* at *3. To be sure, the pleading defects in *White* were more extreme than they are here; but the issue raised by FLNG is whether dismissal is appropriate under federal standards at this stage.

Here, the Court allowed FLNG the opportunity to replead under federal pleading standards. *Iqbal* and *Twombly* require "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). There must be enough facts to state a claim for relief that is plausible on its face. The problem here is that the facts,

accepting all of FLNG's allegations as true, do not demonstrate gross negligence. Questions of fact are matters for trial, but there is no factual dispute here. The Court finds no plausible basis on which FLNG can satisfy the Texas gross negligence standard based on the facts that are pled.

## CONCLUSION

The Court will issue a separate order consistent with this Memorandum Opinion.

SIGNED 01/07/2025

Marvin Isgur
United States Bankruptcy Judge